**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

R.H. DONNELLEY CORPORATION,

       *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

       *Defendant-Appellee.*

No. 10-1365

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(5:08-cv-00501-BO)

Argued: January 26, 2011

Decided: March 31, 2011

Before WILKINSON and KEENAN, Circuit Judges,
and Irene C. BERGER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Keenan and Judge Berger joined.

## COUNSEL

**ARGUED:** William L. Goldman, MCDERMOTT, WILL &
EMERY, LLP, Washington, D.C., for Appellant. Arthur
Thomas Catterall, UNITED STATES DEPARTMENT OF

JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Robin L. Greenhouse, MCDERMOTT, WILL & EMERY, LLP, Washington, D.C.; Joseph H. Selby, MCDERMOTT, WILL & EMERY, LLP, Boston, Massachusetts; Christopher G. Smith, SMITH ANDERSON BLOUNT DORSETT MITCHELL & JERNIGAN, LLP, Raleigh, North Carolina, for Appellant. John A. DiCicco, Acting Assistant Attorney General, Kenneth L. Greene, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; George E. B. Holding, United States Attorney, Raleigh, North Carolina, for Appellee.

---

## OPINION

WILKINSON, Circuit Judge:

Just two days before the statute of limitations barred the Internal Revenue Service from assessing additional taxes for 1994, the R.H. Donnelley Corporation claimed refunds for 1991 and 1992 based on tax credits carried back from 1994. The statute of limitations then expired. After an investigation revealed that the taxpayer had so underreported its 1994 income that there was sufficient tax liability to use up all of the credits in that year, the IRS denied the refund claim. We agree with the district court that the IRS can recalculate tax liability for a year beyond the statute of limitations in order to determine whether excess tax credits can be carried back to previous years to support a refund.

### I.

On December 29, 1999, the R.H. Donnelley Corporation filed timely refund claims with the Internal Revenue Service for the 1991 and 1992 tax years. Those refund claims depended on tax credits that Donnelley sought to carry back from 1994 to create a retroactive overpayment. In particular,

Donnelley had $8,048,374 in excess foreign tax credits that it sought to carry back to 1992 and $3,080,395 in excess research credits—a species of the general business credit—that it sought to carry back to 1991.

In response to Donnelley's refund claims, the IRS conducted an audit and found that a large, unrelated deduction claimed by Donnelley in 1994 was improper. The IRS disallowed that deduction and, in 2006, notified Donnelley that the agency had calculated, but not assessed, a tax deficiency for 1994 of more than $43 million. The IRS did not seek to collect Donnelley's additional tax liability for that year because the statute of limitations for the assessment and collection of additional taxes expired on December 31, 1999—just two days after Donnelley filed its refund claim. *See* I.R.C. § 6501(a). Due to the recalculation of Donnelley's 1994 tax liability, however, the IRS asserted that all of Donnelley's remaining 1994 credits could be and must be used up in 1994. As a result, there were no excess credits to be carried back to 1991 and 1992, and there was thus no overpayment that would justify a refund.

Donnelley did not challenge the disallowance of the deduction. Instead, it disputed that the IRS could recalculate the amount of the excess credits from 1994. Donnelley timely filed suit on its refund claims in the Eastern District of North Carolina in 2008. The district court subsequently granted the United States's motion for summary judgment and dismissed the refund claim. Donnelley now appeals.

## II.

Though Donnelley asserts that the IRS may not recalculate its 1994 taxes to defeat a refund claim for 1991 and 1992, we find this claim untenable in light of the Supreme Court's longstanding recognition that the IRS may recompute tax liabilities in response to a refund claim. *See Lewis v. Reynolds*, 284 U.S. 281 (1932). In *Lewis*, the IRS timely audited an income

tax return and disallowed all deductions except one for attorney fees. Despite paying the resulting deficiency, the taxpayer continued to believe that a deduction for state taxes was proper and so sought a refund. *Id.* at 282.

The IRS denied the refund claim because upon further review, the attorney fee deduction, which was larger than the state tax deduction, was in fact improper. Though the statute of limitations prevented the IRS from actually collecting the resulting deficiency, the IRS asserted that the deficiency remained and so the taxpayer was not entitled to a refund. *Id.*

The Supreme Court agreed. "[T]he ultimate question" in a refund case "is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability." *Id.* at 283 (quoting *Lewis v. Reynolds*, 48 F.2d 515, 516 (10th Cir. 1931)). The Court noted that "[w]hile no new assessment can be made, after the bar of the statute [of limitations] has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax." *Id.* Thus even when the IRS may not collect a deficiency, it may "retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." *Id.*

Donnelley acknowledges that the rule of *Lewis* "is *potentially* applicable here," but contends that *Lewis* is distinguishable because it only permits the IRS to raise "issues arising in that same tax year as an offset to the refund claimed." *Brief of Appellant* at 23. Under this theory, the IRS could challenge a deduction from 1991 or 1992, the years for which Donnelley claims a refund. The agency could not, however, re-examine whether there were excess credits in 1994 to be carried back to 1991 and 1992.

This cramped reading of *Lewis* is unpersuasive. Tax years are not insular units, and the Code often allows taxpayers to shift tax items to other years. *See, e.g.*, I.R.C. § 39 (carryback and carryover of unused business credits); I.R.C. § 904(c)

(carryback and carryover of excess foreign tax credits). *Lewis* rested on a sensible rationale—"[a]n overpayment must appear before refund is authorized," 284 U.S. at 283—that sometimes requires looking into other tax years. The Tax Court too has found that the IRS has authority to recalculate all tax years necessary to determine whether there was an overpayment in the year of the claimed refund, so long as it does not assess additional taxes as a prelude to collecting them. *See Hill v. Comm'r*, 95 T.C. 437, 443 (1990); *Lone Manor Farms, Inc. v. Comm'r*, 61 T.C. 436, 440-41 (1974), *aff'd without opinion* 510 F.2d 970 (3d Cir. 1975)).

In this case, whether there were overpayments in 1991 and 1992 hinges on whether Donnelley had excess foreign tax and business credits to carry back from 1994. The IRS properly acknowledges that "*Lewis* does not permit the IRS to defend against a refund claim for one year with an unassessable (*i.e.* time-barred) understatement of tax from a different year." *Brief of Appellee* at 25; *see also Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063, 1075 (3d Cir. 1991) ("Taxes fairly due but not properly assessed for one year cannot be set-off against refunds due for another year."). For example, the IRS could not on the authority of *Lewis* rebut Donnelley's refund claims for 1991 and 1992 by noting, without more, that Donnelley had underpaid its taxes in 1989. But *Lewis* must permit the IRS to recalculate tax items from other years when those items are necessary to determine the correct tax in the year of the claimed refund. As the district court noted, "Any other result would allow a taxpayer to benefit twice from [its] underpayment." *R.H. Donnelley Corp. v. United States*, 684 F. Supp. 2d 672, 674 (E.D.N.C. 2010).

## III.

Donnelley attempts to circumvent *Lewis* using this court's decision in *Estate of Michael v. Lullo*, 173 F.3d 503 (4th Cir. 1999). But *Estate of Michael* only confirms the correct understanding of *Lewis*. There, after the taxpayer submitted proof

of its entitlement to a tax credit, after it paid all taxes that had been assessed, and after the statute of limitations expired, the IRS sought to collect additional taxes. The IRS claimed, improbably, that *Lewis* justified its attempt to *collect* a deficiency. This court was not convinced: "While *Lewis* does allow the IRS to refuse certain refunds, it does not allow the IRS's collection of any additional sum after the limitations period has expired." *Id.* at 508 (internal quotation omitted). *Estate of Michael* thus rebuffed the IRS's attempt to expand *Lewis* well beyond its natural borders.

Donnelley, however, strains to read *Estate of Michael* to justify its own attempt to escape the force of *Lewis* altogether. *Estate of Michael* noted at one point that "the statute of limitations not only prevents the IRS from assessing these taxes in the future, it *extinguishes* potential liability for all such time-barred taxes." *Id.* at 507 n.5. Donnelley would now use this unremarkable statement to hamstring the IRS's efforts to defend against all sorts of refund claims. In particular, Donnelley supposes that all "potential liability" for additional taxes it might have owed in 1994—a "liability" that in this case would have negated the credits carried back to 1991 and 1992 to create a refund—was "extinguished" after the statute of limitations expired. On this reading, which would do violence to the Supreme Court's clear holding in *Lewis*, "it is irrelevant whether this is a tax refund case or a tax collection case." *Brief of Appellant* at 22.

That is far from what *Estate of Michael* held. The expiration of the statute of limitations does extinguish potential liability in the sense that the taxpayer has no obligation to pay any additional taxes that the IRS tries to *collect*. Indeed, *Estate of Michael* rebuffed the IRS's improper attempt to collect additional taxes in that case after the statute of limitations had expired. But *Estate of Michael* does not stand for the proposition that the IRS may not re-examine tax years intertwined with a claim for a *refund*. The opinion repeatedly emphasized the difference between collection and refund, not-

ing that "*Lewis* simply provided the IRS with a 'shield' it could use to ward-off refund suits; it did not forge a 'sword' with which the IRS could assess or collect additional taxes," *id.* at 508, and that "'[a] deficiency determination, by which the IRS seeks to establish a taxpayer's additional tax liability, is patently different from a refund determination, by which the taxpayer seeks repayment or credit from the IRS,'" *id.* (quoting *Bachner v. Comm'r*, 81 F.3d 1274, 1277 (3d Cir. 1996)).

In this case, the IRS is using *Lewis* properly as a "shield" rather than a "sword." It seeks to collect not one additional penny from Donnelley. Instead it seeks to defend the fisc against Donnelley's bold claim for an $11 million refund. *Estate of Michael*, which recognized again that the IRS may "*retain* payments already received when they do not exceed the amount which might have been properly assessed and demanded," *id.* at 509 n.8 (quoting *Lewis*, 284 U.S. at 283), validates the government's approach in this case.

## IV.

Donnelley maintains that even if *Lewis* and *Estate of Michael* support the IRS's ability to recalculate taxes to defeat refund claims in general, the Internal Revenue Code restricts the IRS when it comes to recalculating the foreign tax and business credit limitations for 1994 that determine whether there are excess credits to carry back to 1991 and 1992.

## A.

Some background is necessary to understand Donnelley's claim. For starters, the Code allows taxpayers to reduce their tax liability dollar-for-dollar by claiming credits. Such credits are available for foreign income taxes paid, I.R.C. § 901(a), and for certain research expenses, I.R.C. § 41, which are included in the general business credit, I.R.C. § 38(b)(4).

One's taxes are not necessarily offset, however, by the full amount of the credits accumulated in a year. Sections 904(a) and 38(c)(1) limit the amount of the credit that can be applied to any particular taxable year under I.R.C. §§ 901(a) or 38(a), respectively. Those provisions operate such that the greater a taxpayer's tax liability in any given year, the higher its credit limitation may be, and the more of its credits may be used up in that year.

For example, I.R.C. § 904(a) states, "The total amount of the credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year." This formula, which is meant to restrict the tax credit to what the U.S. tax would have been on the taxpayer's foreign-source income, can be restated as follows:

> Foreign Tax Credit Limitation = (U.S. Tax Liability) x ((Foreign-Source Taxable Income) / (Total Taxable Income))

*See* H.R. Rep. No. 86-1358 (1960); S. Rep. No. 86-1393 (1960). When a taxpayer's foreign tax credits exceed the foreign tax credit limitation, the excess credits "shall be" carried back to previous years where possible. *See* I.R.C. § 904(c); *see also* I.R.C. § 39(a) (carryback and carryover of unused business credits).*

---

*Under current law, excess foreign tax and business credits can be carried back only one year. *See* I.R.C. §§ 904(c) & 39(a). Prior to 2004, however, foreign tax credits could be carried back up to two years, *see* Pub. L. No. 108-357, § 417(a), and prior to 1997 business credits could be carried back up to three years, *see* Pub. L. No. 105-34, § 1083(a)(1).

## B.

Donnelley relies primarily on § 904(a) to argue that it has excess credits to carry back from 1994. In Donnelley's view, the text of § 904(a) prevents the IRS from recalculating the foreign tax credit limitation in response to a refund suit. Specifically, Donnelley contends that in § 904(a)'s phrase for U.S. tax liability—"the tax against which such credit is taken,"—the word "tax" refers solely to the tax that the IRS could actually collect before the statute of limitations expired, because a "credit can only be 'taken' 'against' a real tax that exists." *Brief of Appellant* at 15. Therefore, the tax credit limitation "must be calculated using the amount of tax that, but for the credits, the taxpayer actually owes," rather than a tax that is correctly calculated but uncollectible due to an expired statute of limitations. *Id.* On this view, Donnelley's foreign tax credit limitation for 1994 was forever fixed at an artificially low level when the statute of limitations elapsed, so foreign tax credits in excess of that credit limitation must be carried back to 1992. But this approach has several difficulties.

## C.

For starters, only wishful thinking could find support for that reading in the text of the Code. Donnelley insists, in entirely conclusory fashion, that the statutory language is airtight: "a foreign tax credit simply cannot be 'taken' 'against' a tax that does not exist and that the taxpayer does not owe." *Id.* at 16. But this conclusion requires us to discover secret meaning in a statute that, while complex, does not speak in tongues. Congress has given no indication that there is anything unusual about § 904(a) such that the foreign tax credit limitation is to be computed using only the timely assessed tax. In the absence of any evidence to the contrary, we cannot conclude that Congress has eliminated the Commissioner's authority to recalculate this aspect of a refund claimant's

taxes, an authority which "is necessarily implied" in the Code. *Lewis*, 284 U.S. at 283.

Moreover, Donnelley's assertion that the expiration of the statute of limitations causes a tax not to exist seriously overstates the matter. *Lewis* makes clear that just because a tax cannot be assessed and collected does not mean that it ceases to play any role. The taxpayer would not "owe" such a time-barred tax insofar as the IRS could not collect it, but the mere existence of an uncollectible tax deficiency nevertheless could be a defense to a refund claim if it meant that the taxpayer had not actually overpaid his taxes. Donnelley contends that the IRS, by recalculating the uncollected 1994 tax, "seeks to override the consequences of the expiration of the statute of limitations," *Brief of Appellant* at 20, but it is Donnelley who seeks to transmogrify the statute of limitations by extending its force far beyond what was recognized in *Lewis* and *Estate of Michael*.

### D.

In addition, Donnelley's approach would lead to the curious result that the IRS could not recalculate the foreign tax credit limitation but could recalculate the credit itself. Donnelley correctly acknowledges that the IRS could recalculate the credits at issue on the authority of *Lewis*, for it "could scarcely object to the Government's entitlement to challenge whether those excess credits actually exist." *Reply Brief of Appellant* at 6. Here, at least, Donnelley recognizes that the Commissioner may recalculate tax items in a closed year when those items are necessary to determine whether there is an overpayment in the year of the claimed refund. But of course the IRS has not sought to challenge the existence of Donnelley's 1994 foreign tax credits, instead challenging only Donnelley's artificially deflated foreign tax credit limitation, which depends on an unrelated deduction that does not affect the credits themselves.

Donnelley simply offers no plausible reason why Congress would allow the IRS to recalculate the credit of § 901 but not the credit limitation of § 904(a). Though Donnelley places great weight on the isolated words "tax against which such credit is taken" in § 904(a), "we consider all the words employed and do not review isolated phrases." *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010). For "'[s]tatutory construction is a holistic endeavor,'" and we therefore must "evaluate the statutory language itself, the specific context in which such statutory language is used, and the broader context of the statute as a whole." *Willenbring v. United States*, 559 F.3d 225, 236 (4th Cir. 2009) (quoting *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004)). The foreign tax credit of § 901 and the foreign tax credit limitation of § 904(a) are not merely part of the same statute, but form a unified statutory scheme. *See* I.R.C. §§ 901(a) & (b) (noting that the foreign tax credit is "subject to the limitation of section 904"); I.R.C. § 904 (limiting the "total amount of the credit taken under section 901(a)"). To calculate one with restrictions not imposed on the other would be to fracture that unity and to introduce additional complexity where Congress desired neither.

## E.

In addition to claiming that the foreign tax credit limitation of § 904(a) must be calculated using only the timely assessed tax, Donnelley asserts that a similar restriction applies to the business credit limitation of § 38(c). That provision states that the general business credit "allowed . . . for any taxable year shall not exceed the excess (if any) of the taxpayer's net income tax over the greater of — (A) the tentative minimum tax for the taxable year, or (B) 25 percent of so much of the taxpayer's net regular tax liability as exceeds $25,000." Without addressing the language of § 38(c) or offering any additional arguments, Donnelley contends that "[a]lthough the wording is different, the statutory provisions governing the carryover and carryback of general business credits are the

same as the foreign tax credit provisions discussed above." *Brief of Appellant* at 24. We see no reason to disagree: Section 38(c) *is* like § 904(a) insofar as the Commissioner may recalculate Donnelley's business credit limitation for 1994 as well as its foreign tax credit limitation.

V.

It takes real chutzpah for Donnelley to demand a refund under these circumstances. Donnelley, by claiming a large deduction in 1994 to which it was not entitled, substantially understated its pre-credit income tax. It then received one sort of windfall when the statute of limitations expired, preventing the IRS from collecting any of the tax that Donnelley would have owed if it had properly reported its net income. Donnelley views this windfall as irrelevant to its entitlement to a refund because "[a]ny benefit to Donnelley from the expiration of the statute of limitations is . . . water already under the bridge." *Brief of Appellant* at 19. As to Donnelley's liability for the collection of that underpaid amount, that may be true.

But Donnelley was not content merely to escape from its tax liability in the first instance. It filed a refund claim two days before the statute of limitations for the assessment of 1994 taxes expired, presumably counting on the fact that the IRS could not investigate any underpayment in time to collect it. That refund claim depended on credits that could be carried back only because Donnelley had misreported its taxes in the first place. It is true that the statute of limitations may protect Donnelley from additional collection, but it does not give Donnelley license to claim a second windfall in the form of a refund. To claim otherwise is almost beyond belief.

Moreover, to validate such a claim would seriously restrict the IRS's ability to protect the public fisc. It bears repeating that tax years are not insular units, and it is often necessary to look to other tax years to determine the proper tax for any given year. Indeed, the Code provides a dizzying array of

credits and deductions that can be carried back to earlier years or carried over to later years. *See, e.g.*, I.R.C. § 39 (carryback and carryover of unused business credits); I.R.C. § 172(b) (net operating loss carrybacks and carryovers); I.R.C. § 469(b) (carryover of passive activity losses); I.R.C. § 810(b) (life insurance company operations loss carrybacks and carryovers); I.R.C. § 904(c) (carryback and carryover of excess foreign tax credits); I.R.C. § 1212 (capital loss carrybacks and carryovers). But if Donnelley's refund suit succeeded here, then taxpayers who use those credits and deductions might be tempted to underreport their income as well to take advantage of a similar double windfall. We cannot sweeten the pot for taxpayers who have not even paid all of their taxes in the relevant years by allowing them a refund to top off their underpayment.

## VI.

No one is entitled a refund who has not actually overpaid his taxes. This axiomatic observation, made first by the Supreme Court in *Lewis* and recognized by this circuit in *Estate of Michael*, defeats this taxpayer's claim. Here, Donnelley has not overpaid its taxes, and we will not allow it to reap where it has not sown. We accordingly affirm the judgment of the district court.

*AFFIRMED*